UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL E. GAREAU,

       Plaintiff,               CIVIL ACTION NO. 08-12047

      v.                    DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF          MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I.   PROCEDURAL HISTORY

### A.   *Proceedings in this Court*

On May 12, 2008, Plaintiff filed the instant suit seeking judicial review of the

Commissioner's decision disallowing benefits (Dkt. 2). Pursuant to 28 U.S.C. § 636(b)(1)(B)

and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of

reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and

disability insurance and Supplemental Security Income benefits (Dkt. 3). This matter is currently

before the Court on cross-motions for summary judgment (Dkt. 19, 24).

### B.   *Administrative Proceedings*

Plaintiff filed the instant claims on May 11, 2005, alleging that he became unable to work

on January 2, 2004 (Tr. 18). The claim was initially disapproved by the Commissioner on June

20, 2005 (Tr. 35). Plaintiff requested a hearing and on July 30, 2007, Plaintiff appeared with

-1-

counsel before Administrative Law Judge (ALJ) Jerome B. Blum, who considered the case *de novo*. In a decision dated October 24, 2007, the ALJ found that Plaintiff was not disabled (Tr. 11). Plaintiff requested a review of this decision on December 26, 2007 (Tr. 9). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC 1-2, Tr. 4), the Appeals Council, on March 7, 2008, denied plaintiff's request for review (Tr. 5-7). *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.      STATEMENT OF FACTS

### A.      *ALJ Findings*

Plaintiff was 49 years of age at the time of the most recent administrative hearing (Tr. 14). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since January 2, 2004 (Tr. 14). At step two, the ALJ found that Plaintiff had the following "severe" impairments:  osteoarthritis involving the lumbar spine and knees and rheumatoid arthritis. *Id*. At step three, the ALJ found

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the

regulations.  *Id.*  Between steps three and four, the ALJ found that Plaintiff had the Residual

Functional Capacity (RFC) to perform "sedentary work ... [with] restrictions of just unskilled

nonindustrial work with a sit/stand option" (Tr. 17).  At step four, the ALJ found that Plaintiff

could not perform his previous work as a painter and photo lithographer.  *Id*.  At step five, the

ALJ denied Plaintiff benefits because the ALJ found that – based on the testimony of a

Vocational Expert (VE) – Plaintiff could perform a significant number of "sedentary" jobs

available in the national economy, such as video monitor and information clerk (Tr. at 16).

> ### B.    *Administrative Record*

> #### 1.    **Plaintiff's Testimony**

Plaintiff testified that he stopped working in June 2004, due to joint pain, fevers, and

fatigue (Tr. 528-29).  He stated that he had a fever every day, could not grip objects, and could

not stand without pain (Tr. 529-30).  Plaintiff testified that every day he stayed in bed for two

hours to an entire day (Tr. 530).  He stated that he could walk for a quarter of a mile, lift and

carry groceries, and had no difficulty sitting (Tr. 532-33).  Plaintiff testified that he washed

laundry and cleaned dishes, but had difficulty with chores (Tr. 533).

> #### 2.    **Medical Evidence**

Plaintiff presented to Khurrum Pirzada, D.O., for the first time in September 2004,

complaining of diffuse pain, especially in his knees with a new onset of low back pain and low

energy (Tr. 507).  Plaintiff stated that he had been seeing his primary care doctor for his

complaints and the doctor had diagnosed degenerative disc disease in the neck and osteoarthritis,

for which the doctor prescribed Vicodin (Tr. 507).  On examination, Plaintiff had tenderness in a

joint space in his knees upon palpation, but no effusion and a full range of motion (Tr. 507).

Plaintiff also had tenderness on palpation in his right middle to lower back at joint spaces L3-L5

(Tr. 507).  Dr. Pirzada prescribed medication, recommended physical therapy, and ordered

laboratory tests (Tr. 508).

The next month, Dr. Pirzada reviewed Plaintiff's past x-rays and x-rays of his knees and

lumbar spine taken that month (Tr. 500, 502, 503).  Dr. Pirzada noted that the recent x-rays

showed osteoarthritis in his knees and degenerative lumbar disease with scoliosis and that

Plaintiff also had cervical and right shoulder osteoarthritis (Tr. 500, 502, 503).  Dr. Pirzada

ordered further lab tests, referred Plaintiff to an orthopedic doctor, and prescribed Vicodin and

Motrin (Tr. 500).

On referral from Dr. Pirzada, Plaintiff presented to Martin Jenter, D.O., on five occasions

between November 2004, and March 2005, complaining of bilateral knee pain, with the left

worse than the right, unrelieved with anti-inflammatory medication (Tr. 108-12).  During these

appointments, Plaintiff's knee strength ranged from 3/5 to full strength, he displayed a full range

of motion, and had no pain other than general pain over the range of motion (Tr. 108-12).  An x-

ray revealed moderate patellofemoral arthritis in the right knee and mild patellofemoral arthritis

in the left knee (Tr. 112).  Dr Jenter injected Plaintiff's left knee with Hyalgan (an osteoarthritis

medication) on three occasions with no relief, and concluded in March 2005, that Plaintiff had

"some form of inflammatory arthritis causing pain," but that a rheumatologist had found no

illness (Tr. 108-12).

Plaintiff presented to William Beaumont Hospital (Beaumont) five times between

December 2004, and March 2005, complaining of multiple joint pains and aches, including in his

-4-

wrists, fingers (MCP and PIP joints), knees, hips, and upper and lower back (Tr. 83-88, 97-98, 105-06). Plaintiff also complained of a constant low-grade fever and fatigue (Tr. 87). After his initial visit, Plaintiff was referred to Martin Pevzner, a rheumatologist, who ordered laboratory tests and prescribed medication (Tr. 97). X-rays of Plaintiff's hands in January 2005, revealed no abnormalities (Tr. 90). In March 2005, a doctor noted that Plaintiff had no inflammation in any joint, a full range of motion, no stiffness, and normal lab tests (Tr. 84). The doctor opined that Plaintiff's joint pains were likely degenerative (Tr. 84).

Plaintiff presented to Dr. Pirzada on four occasions in March and April of 2005, with continuing complaints of low-grade fever, arthralgias, and fatigue; Dr. Pirzada managed his medications and recommended that he follow-up with his rheumatologist and orthopaedist (Tr. 462-63, 465-66). On March 3, 2005, Dr. Pirzada wrote a letter to Plaintiff's attorney in which he opined that Plaintiff had back, knee, shoulder, and hand pains which would require that he take hourly breaks during a workday (Tr. 141).

In April 2005, Plaintiff presented to Franklin Rosenblat, D.O., on referral from Dr. Pirzada due to his continuing complaints of frequent fever, which began in 2004, along with pain and numbness in his hands, fatigue, and night sweats (Tr. 459-61). Dr. Rosenblat ordered tests to determine the etiology of Plaintiff's fever (Tr. 460-61). Plaintiff returned to Dr. Rosenblat the next month complaining of continuing night sweats, fever, and "feeling poorly" (Tr. 444). Dr. Rosenblat noted that an ultrasound had revealed a gall bladder polyp, fatty infiltration of the liver, and a renal cyst, but Dr. Rosenblat reported that no infectious source for his symptoms had been found (Tr. 136-37, 444). Dr. Rosenblat discussed the possibility of an auto-immune disorder, such as Still's Disease (a type of juvenile arthritis that can occur in adults) or hepatitis,

and suggested a repeat rheumatological evaluation (Tr. 444). The next month, Dr. Rosenblat noted that several tests, including a gallium study, blood tests, and a skin test were normal and opined that Plaintiff's fevers were likely due to a rheumatologic disease based on Plaintiff's complaints of joint pains (Tr. 140, 142, 442).

On June 8, 2005, Dr. Jenter wrote a letter to the state disability determination service, in which he stated that Plaintiff had a history of knee pain and that Plaintiff reported no relief with anti-inflammatory medication, including steroid injections (Tr. 107). Dr. Jenter opined that Plaintiff had adequate motion to sit, stand, and walk, could not kneel and squat, and "would recommend most likely lifting a load less than 30 pounds" (Tr. 107). He stated that Plaintiff had no limitation in walking short distances or sitting and standing, and could perform "light" or "sedentary" work (Tr. 107).

On June 16, 2005, a state examiner reviewed Plaintiff's records, and opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and sit, stand, and walk for six hours per workday (Tr. 76). The examiner opined that Plaintiff could occasionally, climb, balance, stoop, kneel, crouch, and crawl, but should avoid concentrated exposure to vibration (Tr. 77, 79).

Between June 2005, and March 2006, Plaintiff presented to the rheumatology department at Beaumont approximately every one to two months (Tr. 215-16, 224-28, 232, 234). In June 2005, Plaintiff complained of: fever that was worse in the afternoons; knee, hip, and hand pain (MCP and PIP joints) with mild swelling and inflammation; fatigue; and morning stiffness (Tr. 232, 234). A doctor diagnosed rheumatoid arthritis and prescribed prednisone, which Plaintiff stated helped with his hand pain and fever; however, Plaintiff stated that his hip and knee pain

was worse (Tr. 232).  Plaintiff was then prescribed MTX (methotrexate, a drug prescribed for

rheumatoid arthritis) (Tr. 227).  Between November and February 2006, Plaintiff presented with

continuing complaints of pain in multiple areas and increased fatigue and weakness, and the

doctor stated that Plaintiff had Still's disease (Tr. 224-26).

Between August 2005, and July 2006, Plaintiff presented to Dr. Pirzada approximately

once a month, primarily for treatment and medication management for hypertension,

dyslipidemia (a lipid disruption, such as high cholesterol), and other disorders; Dr. Pirzada

frequently prescribed Vicodin (Tr. 405, 408-09, 411, 421, 425-26, 429-30, 435, 439-40).  In

October 2005, Plaintiff reported that his pain was controlled with Vicodin (Tr. 435).

Between July 2006, and June 2007, Plaintiff presented to the rheumatology clinic at

Beaumont approximately every one to two months (Tr. 183-86, 194, 196-99).  Plaintiff

repeatedly complained of low-grade fever and pain in multiple places including his hands, knees,

hips, and ankles (Tr. 183-86, 194, 196-99).  Between July and September 2006, doctors

discontinued MTX and Prednisone, and Plaintiff complained of difficulty walking (Tr. 198-99).

In November 2006, Plaintiff complained of decreased wrist range of motion (Tr. 194).  In

January and February 2007, Plaintiff reported that his symptoms had been worse overall in the

last year, but his stiffness had improved with Enbrel (an arthritis medication) (Tr. 185, 186).

Plaintiff presented to Dr. Pirzada approximately one to three times a month between

August 2006, and June 2007, primarily for treatment and medication management for

hypertension, dyslipidemia, and testosterone deficiency; Dr. Pirzada continued to prescribe

Vicodin (Tr. 363, 365, 368, 372-73, 375, 380, 383, 385, 394-95, 400-01, 403).  Dr. Pirzada often

noted that Plaintiff had symptoms such as weakness, back pain, joint pain, and muscle pain (Tr.

363, 368, 372, 383, 385, 394-95, 400).  However, Dr. Pirzada noted no musculoskeletal symptoms during some visits (Tr. 365, 373, 380).  In January 2007, Plaintiff reported that he had decreased morning stiffness on Enbrel, and that his arthritis was controlled, although he had constant aches (Tr. 383).  Plaintiff also stated that his range of motion was improved and that he was not taking Prednisone (Tr. 383).  Dr. Pevzner wrote a "To Whom It May Concern" letter in August 2007, in which he stated that he had treated Plaintiff for several years for Still's disease and that despite taking several medications, Plaintiff continued to have arthralgias with severe stiffness and fatigue and low-grade fevers (Tr. 359).  Dr. Pevzner noted that despite the effectiveness of more recently prescribed medication, Plaintiff continued to have overwhelming fatigue and discomfort in his upper and lower extremities with minimal activity; Dr. Pevzner opined that Plaintiff was "totally disabled" (Tr. 359).

The record contains numerous undated treatment notes from Beaumont (Tr. 217-23, 253-58).  A nurse noted that Plaintiff had a full range of motion in all joints with warmth and redness of joints in his hands (MCP and PIP joints), but no deformity (Tr. 258).  On another occasion, a nurse noted that Plaintiff had no tenderness in his hands (PIP and MIP joints), wrists, shoulders, or spine with a full range of motion in all joints (Tr. 257).  The nurse did note some abnormalities in Plaintiff's hands, such as mild effusion (Tr. 257).  A doctor noted that Plaintiff had a full range of motion, 5/5 motor strength, and preserved sensation and reflexes; however, the doctor noted that Plaintiff's fever had returned despite use of MTX (Tr. 256).  Another doctor noted that Plaintiff had a full range of motion in all joints, and was able to make a full fist (Tr. 255).  The doctor stated that Plaintiff had redness and swelling of the hips, but a full range of motion (Tr. 255).  Another doctor reported that Plaintiff's hands were non-tender, with minimal

swelling and no redness (Tr. 254).  The doctor also noted that Plaintiff had edema in the knees,

but a full range of motion in all extremities (Tr. 254).  On another occasion, a doctor reported

that Plaintiff displayed a full range of motion, but had restricted wrist movement and synovitis in

the hands (Tr. 253).  A nurse observed on a separate visit that Plaintiff had no signs of active

synovitis, no swelling, and a good range of motion (Tr. 223).  During one visit, Plaintiff

complained of pain and a doctor reported a decreased range of wrist motion, synovial thickening,

and tenderness in hand joints (PIPs and MCPs), but no active synovitis (Tr. 221).  Plaintiff

displayed a normal range of motion in his shoulders, elbows, and knees, with slight knee

tenderness (Tr. 221).  During another appointment, a doctor noted that Plaintiff had been tried on

MTX and Imuran without relief (Tr. 217).  The doctor reported that Plaintiff had fatigue, a low-

grade fever, and constant inflammation in his knees, hands, and hips, with stiffness in the

morning for up to a few hours (Tr. 217).

### 3.    Vocational Expert

The ALJ asked the VE for information concerning several unskilled jobs requiring

sedentary exertion and the option to sit or stand at will, including video surveillance monitor and

information clerk (Tr. 537-39).  The VE testified that 1,600 information clerk jobs and 1,400

video surveillance monitor jobs existed in the regional economy (Tr. 538).  The VE stated that

those jobs required handling no more than a pencil, paper, and occasionally a telephone (Tr.

539).

### C.    Plaintiff's Claims of Error

Plaintiff sole argument on appeal is that the ALJ erred in discounting the opinion of Dr. Pevzner dated August 7, 2007, and improperly evaluated Dr. Jenter's reports (Pl.'s Brief at 3-10). All other arguments are waived.[2]

Defendant responds that the ALJ appropriately declined to assign controlling or significant weight to Dr. Pevzner's opinion to the extent that he opined that Plaintiff was disabled and that the ALJ properly evaluated Dr. Jenter's opinion.  Defendant further argues that the ALJ's decision is supported by substantial evidence, and should be affirmed.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

---

[2]    *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) ("Since the attorney at the hearing did not pursue this argument and the argument was not presented to the district court, it appears that the argument has been abandoned.") (citation omitted); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (citation and internal quotation omitted).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

**B.**     *Governing Law*

The "[c]laimant bears the burden of proving his entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

-13-

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

-14-

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees him/her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007).

### C.      *Analysis and Conclusions*

As noted earlier, Plaintiff raises two arguments on appeal: (1) that the ALJ erred in

discounting the opinion of Dr. Pevzner dated August 7, 2007; and (2) that the ALJ improperly

evaluated Dr. Jenter's reports (Pl.'s Brief at 3-10).

### 1.      **Dr. Pevzner**

Plaintiff argues that the ALJ erred in not adopting Dr. Pevzner's August 2007 opinion

(Pl.'s Brief at 4-8). Dr. Pevzner opined in August 2007, that due to Still's disease, Plaintiff had

low-grade fevers, severe stiffness, overwhelming fatigue, and discomfort in his arms and legs

with minimal activity (Tr. 359). Dr. Pevzner stated that as a consequence, Plaintiff was "totally

disabled" (Tr. 359). Defendant responds, as an initial matter, that Dr. Pevzner's opinion that

Plaintiff was "totally disabled" was not entitled to deference because whether Plaintiff is disabled

is an issue reserved to the Commissioner and opinions on that issue are not given any special

significance. Defendant's observation is correct. *See* 24 C.F.R. §§ 404.1527(e)(1) and (3),

416.927(e)(1) and (3); SSR 96-5p; *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390

(6th Cir. 2004) ("The determination of disability is [ultimately] the prerogative of the

[Commissioner], not the treating physician.") (citation omitted). Defendant further responds that

the ALJ appropriately declined to assign controlling or significant weight to Dr. Pevzner's

opinion, because his opinion conflicted with other physicians' opinions and was not corroborated

by the other evidence in the record (Tr. 15). Defendant is also correct on this front.

In particular, Dr. Pevzner's opinion conflicted with the opinions of Dr. Jenter and of the

state examiner. Contrary to Dr. Pevzner's opinion that Plaintiff was "totally disabled," Dr. Jenter

opined that Plaintiff could perform a range of activities (Tr. 107). Dr. Jenter opined that Plaintiff

had adequate motion to sit, stand, and walk, could not kneel and squat, and should lift less than

30 pounds (Tr. 107).  Dr. Jenter also stated that Plaintiff had no limitation in walking short

distances or sitting and standing, and could perform light or sedentary work (Tr. 107).  In fact,

Dr. Jenter's opinion is less restrictive than the RFC found by the ALJ, which limited Plaintiff to

sedentary work (Tr. 17).  Plaintiff argues that Dr. Jenter's opinion only differs from Dr.

Pevzner's opinion in the degree to which Plaintiff was impaired (Pl.'s Brief at 8).  Plaintiff's

argument is unavailing, because the degree to which he was limited is precisely the issue that the

ALJ was deciding in evaluating the opinions.

Plaintiff also asserts that Dr. Pevzner's opinion should have been given more weight than

Dr. Jenter's opinion because Dr. Pevzner had a longer treatment relationship with him (Pl.'s

Brief at 5).  However, Plaintiff does not assert that the duration of Dr. Jenter's treatment was

insufficient to allow him to form an opinion, rather Plaintiff is inviting this Court to reevaluate

the relative weight given to his physicians' opinions.  It is well established that it is not for this

Court to re-weigh the evidence.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d

679, 681 (6th Cir. 1989) ("The scope of our review is limited to an examination of the record

only.  We do not review the evidence de novo, make credibility determinations nor weigh the

evidence.") (citations omitted).

Furthermore, Dr. Pevzner's opinion also conflicted with the opinion of the state

examiner, who reviewed the medical evidence and opined that Plaintiff could lift 20 pounds

occasionally, 10 pounds frequently, and sit, stand, and walk for six hours per workday (Tr. 76).

The state examiner also opined that Plaintiff could occasionally, climb, balance, stoop, kneel,

crouch, and crawl, but should avoid concentrated exposure to vibration (Tr. 77, 79).  This

opinion was, in fact, less restrictive than the RFC found by the ALJ (Tr. 17) (which limited Plaintiff to "sedentary" work with a sit/stand option).

As such, the ALJ appropriately found that Dr. Pevzner's opinion was not consistent with the objective evidence (Tr. 15). *See Warner*, 375 F.3d at 390 (While generally the opinions of a treating physician are given substantial, if not controlling, deference, they are only given such deference when they are supported by the objective medical evidence) (citations omitted). Although Dr. Pevzner opined that Plaintiff was extremely limited, treatment notes from Beaumont often reflected that Plaintiff's symptoms were less severe than Dr. Pevzner suggested. For example, although doctors and nurses at Beaumont frequently noted that Plaintiff had abnormalities on examination, they often reported that he had a full or normal range of motion (Tr. 84, 223, 254-58).

Finally, the ALJ appropriately concluded that Dr. Pevzner's opinion was inconsistent with the results of Plaintiff's x-rays (Tr. 15). A lumbar spine x-ray in October 2004, revealed only mild spondylosis (degenerative arthritis of the vertebrae) at L2-5 and minimal scoliosis (Tr. 503). Dr. Jenter took x-rays of Plaintiff's knees in November 2004, which revealed moderate patellofemoral arthritis in the right knee and mild patellofemoral arthritis in the left knee (Tr. 112). Furthermore, an x-ray of Plaintiff's hands in January 2005, revealed no abnormalities (Tr. 90). In sum, the undersigned finds that the ALJ appropriately found, based on medical source opinions, objective test results, and other evidence that Dr. Pevzner's opinion that Plaintiff was "totally disabled" was not entitled to controlling or significant weight.

2.     **Dr. Jenter**

Plaintiff also argues that the ALJ misinterpreted Dr. Jenter's June 2005 opinion and failed to consider other medical evidence from Dr. Jenter (Pl.'s Brief at 5, 8).  Plaintiff's argument that the ALJ misinterpreted Dr. Jenter's June 2005 opinion appears to rest solely on the ALJ's characterization of how much weight Dr. Jenter opined that Plaintiff could lift (Pl's Brief at. 8). Dr. Jenter stated that he "would recommend most likely a lifting load less than 30 lbs" (Tr. 107). The ALJ stated that Dr. Jenter opined that Plaintiff could "lift up to 30 pounds" (Tr. 15).

Defendant responds that there is minimal, if any, distinction between a restriction on lifting less than 30 pounds and a limitation of lifting up to 30 pounds and that – even if a distinction exists – Plaintiff makes no effort to explain how any error would have altered his RFC.  Defendant's argument is well-taken.  There is no significant difference between the ALJ's finding and Dr. Jenter's opinion and, in any event, the ALJ found that Plaintiff was only capable of "sedentary" work, which involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools (Tr. 17).  *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).  Thus, even assuming *arguendo* there were a meaningful distinction between Dr. Jenter's opinion and the ALJ's finding, it is a distinction without a difference since the ALJ's RFC ultimately limited Plaintiff to lifting no more than 10 pounds.

In sum, after review of the record, the undersigned finds that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

III.    **RECOMMENDATION**

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  February 1, 2010

<u>*Certificate of Service*</u>

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, February 1, 2010, by electronic and/or ordinary mail.*

<u>*s/Melody R. Miles*</u>
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*